## Donacher v. Tafferty, et el.

(Decided March 5, 1912.)

Appeal from Boone Circuit Court.

1. Executions—Notice of Issual and Levy Under Section 2358a, Kentucky Statutes.—The notice required by this statute will be sufficient if it follows the language of the statute. It is not necessary that the notice should describe the property levied upon.

2. Same—Delay in Enforcing Lien Created · by Levy.—Where the statutory notice is given, a delay of two and one-half years in subjecting the property levied upon will not defeat the execution lien as against a purchaser without notice from the execution debtor.

3. Lien—Action to Enforce—Lis Pendens Purchaser.—Under section 2358a, of the Kentucky Statutes, an action seeking to enforce a lien upon real property will not affect the title of a purchaser without notice, except from the time there has been filed in the office of the clerk of the county court the notice required by the statute.

4. Lien—Lis Pendens Purchaser.—The doctrine of lis pendens that prevailed before the enactment of this statute does not now obtain, and third parties and strangers to a suit to enforce a lien upon property, who are without actual notice, are not chargeable with notice of the suit, unless the statutory notice is given.

S. W. TOLIN and JOHN S. GAUNT for appellant.

N. E. RIDDELL and S. GAINES for appellees.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

On the 11th day of February, 1908, an execution returnable on the 4th day of April, from the Boone Circuit Court issued in favor of Donacher against Tafferty for $61, with interest thereon. This execution came into the hands of the sheriff of Boone County on the day it was issued, and on the following day he executed it by levying upon two lots, Nos. 202 and 203, in the town of Petersburg, Boone County, the lots being described in the levy as:

"In one body and bounded as follows: On the north by lot No. 199, on the south by Third street, on the east by Mill street, and on the west by an alley; levied upon as the property of the defendant, Mike Tafferty."

On the 12th of February, 1908, the following memoranda was filed in the county clerk's office of Boone County:

"JOHN B. DONACHER, . . . . . . . . *Plaintiff.*
    v.        Memoranda.
"MIKE TAFFERTY, . . . . . . . . *Defendant.*

"The style of the action is as set out in the above caption. Execution issued February 11, 1908, from the clerk's office of the Boone Circuit Court. The number thereof is 8,590, and is in favor of the plaintiff, John B. Donacher against the defendant, Mike Tafferty. The number of the action is 6,082. February 12, 1908.

                "S. W. TOLEN,
           Attorney for Plaintiff."

In April, 1908, Donacher brought this action in equity against Tafferty, and the Security Perpetual Bldg. & Loan Assn. The petition set up the issual and levy of the execution, that the building and loan association had a mortgage lien on the property, and asked that it be required to assert its lien and that the property be sold and the proceeds be applied to the payment of the mortgage lien and the execution debt of Donacher. No notice of the filing or pendency of this suit was filed in the office of the county clerk.

Various orders were made in the case at subsequent terms of the court until April 11, 1911, when Donacher filed an amended petition stating that since the commencement of the action and in the fall of 1910 one James Moreland had purchased from Tafferty the lots upon which the execution had been levied and

upon which Donacher was seeking in the action to enforce his lien, and Moreland was made a party defendant and requested to set up any claim he might have to the lots. In obedience to the summons issued on this amended petition, Moreland filed an answer, in which he said in substance that in November, 1910, he purchased from Tafferty the lots mentioned for the sum of $250, which he paid in cash. That at the time he made such purchase, he had no notice of the execution or its levy or of the pendency of the action and was a bona fide innocent purchaser for value. To this answer, a reply was filed, setting up the notice before mentioned filed in the office of the county clerk, and averring that by virtue of this notice Moreland had constructive notice of the issual of the execution and the lien created thereby.

The case being submitted on the pleadings, the court entered a judgment in favor of Moreland, and Donacher appeals.

It appears from the briefs filed by counsel that the court was induced to decide in favor of Moreland for two reasons: First, because the notice filed in the county clerk's office of the issual of the execution was not sufficient, and second, because no notice was filed in the county clerk's office of the pendency of the suit to enforce the execution lien.

Section 2358a, subsection 1, of the Kentucky Statutes, provides in part that:

"No action * * * hereafter commenced or filed in which the title to or possession or use of or any lien, tax, assessment or charge on real estate, or any interest therein, is in any manner affected or involved * * * shall in any manner affect the right, title or interest of any subsequent purchaser * * * without notice thereof, except from the time when there shall be filed in the office of the clerk of the county court of the county in which such real estate of a greater part thereof lies, a memorandum stating (1) the number of said action, where the action is numbered, and style of such action or proceeding and the court in which it is commenced or is pending; (2) the name of the person whose right, title and interest in or claim to real estate is involved or affected; (3) a description of the real estate in said county thereby affected. * * * No notice shall extend to the interest of any person not designated therein, nor to any real estate or interest, except that described therein.

\* \* \* Sub-section 2. No attachment or execution hereafter issued, nor any levy or sale under either, shall in any manner affect the right, title to, or interest of a subsequent purchaser, lessee or incumbrancer without notice thereof of any real estate or any interest therein upon which such attachment or execution may be or may have been levied, except from the time there shall be filed in the office aforesaid a memorandum, showing the number and style of the action in which said attachment or execution issued, the court from which it issued, the number, if any, of such attachment or execution, the date thereof, and the name of the persons in whose favor and against whom respectively it issued. Such notice may be filed by any party in interest.''

Three questions are presented by the record: First, was the notice of the issual of the execution filed in the office of the county clerk sufficient; second, was it necessary to create a lis pendens that notice should have been filed in the county clerk's office of the suit to enforce the lien; and, third, did the delay in enforcing the execution lien have the effect of defeating the levy and lien as against a bona fide purchaser without notice.

It will be observed that there is a marked difference between sub-section one and sub-section two in respect to the matter that must be contained in the notice filed in the office of the county clerk. Under sub-section one the notice, among other things, contains a description of the real estate affected by the suit, and unless it does this, the notice will not be sufficient. But for reasons that it is difficult to understand the Legislature did not see proper to require a description of the property to be given in the notice of the issual or levy of an attachment or execution, but as the statute prescribes the character of notice, and what it shall contain, we think a notice in conformity to the statute is sufficient, and the notice given followed every requirement of the statute. It is insisted that the provisions of sub-section one, so far as applicable, should be read into and in connection with the provisions of sub-section two; but we are unable to agree with counsel that the statute should be so construed. These sections relate to entirely different proceedings, and each section is complete in itself. Neither contains any reference to the other, and each standing alone makes a complete statute on the subject treated of. We do not know of any rule of construction that would authorize us to read these two sections to-

gether or read into one certain parts of the other. Although it is easy to appreciate that a description of the property levied on by the execution would be equally, if not more, useful in giving notice of the execution lien than it would be in giving notice of a lien sought to be enforced in a pending action, the Legislature had the unquestioned authority to make such provision in respect to the matter under consideration as it saw proper; and, having done so, we are not at liberty to add to or take from the legislative enactment.

2. So far as the rights of Donacher and Moreland are concerned, we do not think it was necessary to enable Donacher to retain the benefits arising from his execution levy that he should have given notice of the pendency of the action. Of course, the rights of Moreland are not to be affected by the pendency of this suit, nor were the rights of Donacher in any manner enlarged by this suit. In short, the status of the parties is to be determined without reference to this suit, and as if it had never been brought. If Donacher had filed notice of the bringing of this suit, as provided in sub-section one, he could undoubtedly have relied upon its pendency to defeat the claim of Moreland, although no notice of the execution had ever been filed in the clerk's office, as under the statute, notice of the filing of the suit would have been constructive notice to Moreland of the pendency of the action and would have put him in the attitude of a lis pendens purchaser. But, without the statutory notice Moreland was not chargeable with notice of the pendency of this action. The doctrine of lis pendens that prevailed before the enactment of this statute does not now obtain, and third parties and strangers to a suit to enforce a lien upon property who are without actual notice are not now chargeable with notice of the suit, unless the statutory notice is given. It requires this statutory notice to put in operation the lis pendens rule, and in the absence of the notice there is no lis pendens of which third parties are required to take notice. Perkins v. Ogilvie, 140 Ky., 412. We, therefore, put aside the pendency of this action, as it does not help Donacher or prejudice Moreland.

3. The next question is: Did the delay in enforcing the execution levy and lien have the effect of releasing the property from the lien at the time Moreland purchased it. To state the question differently, we may put it this way: If no suit had been filed, and the sheriff had

simply levied the execution and held it without taking
any other action thereunder, was there such delay as re-
leased the property from the lien in November, 1910,
when Moreland became the purchaser without notice.
Prior to the adoption of the statute requiring notice to
be filed of the issual and levy of the execution, we think
this long delay in taking action to enforce the execution
lien would have defeated the execution plaintiff in a con-
test with a bona fide purchaser, as Moreland was. De-
posit Bank of Cynthiana v. Berry, 2 Bush, 236; Owens
v. Patterson, 6 B. Mon., 488; Cook v. Clemens, 87 Ky.,
566. But, now if notice of the issual of the execution is
given, as provided by the statute, it is not necessary that
the execution plaintiff should be as diligent as formerly
to preserve his lien by taking action to enforce it within
a reasonable time or else lose it against the bona fide
purchaser. How long the execution plaintiff who gives
the statutory notice may delay the enforcement of his
lien so as to defeat the rights of a bona fide purchaser
it is not necessary in this case to decide, as we do not
think that the time that elapsed between the issual and
levy of the execution and the purchase by Moreland was
sufficient to relieve the property of the lien created by
the execution. The question here presented was before
this Court in Park v. McReynolds, 111 Ky., 651. In that
case, Park in March, 1895, caused to be issued an execu-
tion, which was levied on the day of its issual upon a
tract of land. In April, 1895, the sheriff was directed
by the execution plaintiff to return the execution without
releasing the levy, which he did. In October, 1897, Park
caused to be filed in the county clerk's office of the county
the notice of the issual and levy of the execution as re-
quired by the statute. In August, 1899, the execution
plaintiff procured a venditioni exponas, commanding
him to sell the land that had been levied on under the
execution. Thereupon McReynolds, who had purchased
the land levied on under the execution from Wallace in
June, 1899, brought suit to enjoin its sale under the
vendi. In holding that the lien of the execution creditor
was superior to the rights of the purchaser McReynolds,
the court said in part that:

"It is earnestly insisted for appellee that the long
delay upon the part of the appellant in enforcing the
sale under the execution was in law and in fact an aban-
donment of the same, and should be so treated. * * *
If Park had failed to comply with said statute, we think

he would have lost his lien; and, having complied with it, we are of opinion that the same was constructive notice to the appellee, and that he purchased at his peril if he did so without an actual examination of the records. We do not think that the delay in enforcing a sale from the levy to the time of filing the notice required was sufficient to nullify the levy. Nor do we think that the delay to enforce a sale after the filing of the notice aforesaid was sufficient to destroy the lien theretofore acquired.''

We are of opinion that on the record before us, Donacher had a lien by virtue of the execution levy upon the property at the time it was purchased by Moreland, and so the judgment is reversed with directions for a new trial in conformity with this opinion.