ETHEL LAKE, *as Executrix, etc., et al.* V. MARK
HATHAWAY *et al.*

No. 14,942   (89 Pac. 666.)

SYLLABUS BY THE COURT.

1. EXECUTOR'S SALE—*Validity—Collateral Attack.* Upon a collateral challenge the validity of a sale of real estate ordered and confirmed by the probate court does not depend upon whether there were irregularities in the proceedings, but upon whether the court had jurisdiction to make the orders.

2. ——— *Rights of Innocent Purchaser at a Valid Sale.* The confirmation of a sale made by an executrix in pursuance of an order of the probate court to sell land of the testator to pay the indebtedness of the estate, granted after a hearing had upon due notice, passes the equitable title of the land to an innocent purchaser and entitles him to a deed upon payment or tender of payment of the purchase-price.

3. ——— *Agreement of Heirs Not to Sell—Notice Not Given to Court or Purchaser.* The fact that after the sale was ordered, and before it was made, the heirs of the testator, one of whom was the executrix, entered into a contract to settle the indebtedness of the estate without a sale of the real property, which contract was not brought to the notice of the purchaser or to the attention of the court until after the sale was confirmed and the deed approved, did not deprive the court of jurisdiction to confirm the sale nor affect the rights and liabilities of the purchaser.

Error from Chase district court; FREDERICK A. MECKEL, judge. Opinion filed March 9, 1907. Reversed.

*Madden & Doolittle,* and *D. E. Rathbun,* for plaintiffs in error.

*Grisham & Swan,* and *C. E. Dean,* for defendants in error.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was a suit to enjoin the delivery of a deed executed by Ethel Lake, as executrix of the estate of Joseph Hathaway, deceased, and to

set aside the orders of the probate court for the sale and confirmation of the sale of land in pursuance of which the deed was executed.

The proceeding was brought by the three sons of the deceased, Mark, Orin, and Edward, and in their petition they alleged that their father died owning real estate in Iowa and Kansas, as well as some personal property. They set forth a will by which the real property in Mills county, Iowa, and Chase county, Kansas, together with some personalty, was given to the three sons, and land in Chautauqua county, Kansas, was devised to Ethel Lake, who was the only daughter of the deceased. In it was the provision that, "there being some encumbrance on the land in both counties last above mentioned, it is my desire that the lands in Chase county be sold and the encumbrance on the Mills county farm be paid, and the remainder of the proceeds of said land be equally divided between Mark, Orin, and Edward."

It was further alleged that the will was probated in Chautauqua county, where Joseph Hathaway died, and that after filing a certified copy of the will in Chase county, Kansas, the executrix applied to the probate court of that county for permission to sell the Chase county land for the payment of debts, as provided for in the will, and that on December 5, 1904, an order authorizing the sale was made. It was also alleged that before the sale, and on January 23, 1905, Ethel Lake went to Iowa and entered into a contract with her brothers making provisions for the payment of the debts so that a sale of any of the real property devised would be unnecessary, and stipulating that the proceedings instituted in the probate court of Chase county for the sale of the land should be dismissed, but that in violation of the contract she sold the land to Clarence North, who was made a defendant in this case.

In her answer Ethel Lake alleged that a sale of the

land was not only in accordance with the directions in the will but was necessary in order to pay the debts of the estate, and she averred that her assent to. the contract mentioned was obtained by misrepresentation and fraud.

In his answer and cross-petition Clarence North, the purchaser of the land, set forth the proceedings of the probate court ordering the sale, including the notice of sale and appraisement of the property, and averred that he purchased the land for $7500; that the sale was duly confirmed and the deed ordered; that a deed was executed and placed in the custody of T. W. Hafer, who received the deed for him; and that he tendered the full amount of the purchase-price of the land, but, at the instance and request of the plaintiffs, Hafer had not delivered the deed. He further averred that he purchased the land in good faith, without any notice or knowledge of the contract pleaded by the plaintiffs, and that the existence of that writing was not known to him until after the confirmation of the sale. He also alleged the invalidity of the contract signed by the executrix.

A trial resulted in a judgment setting aside the proceedings of the probate court relating to the sale of the land, canceling the deed of the executrix, holding the contract between Ethel Lake and her brothers to be valid, and quieting the title to the Chase county land in the plaintiffs. The defendants prosecute this proceeding in error.

This suit is a collateral attack on proceedings in, and the decision of, a court of record. The probate court of Chase county has jurisdiction of the estates of deceased persons. Its jurisdiction was duly invoked by the petition of the executrix, about whose appointment there is no question. Notice of the hearing was required to be given by publication, and that notice was brought to the personal attention of the plaintiffs. Based upon these notices, the hearing was

had and the order for the sale of the land was made. Appraisers were appointed, who placed a valuation upon the land, and it was subsequently sold for more than the appraised value. The court then examined the proceedings and confirmed the sale. So far as the records of the probate court disclose the proceedings were regular, but if there had been any irregularity the order of confirmation would have cured it. The validity of the sale as challenged in this suit does not depend upon whether there were irregularities in the proceedings but upon whether the probate court acquired jurisdiction to order and confirm the sale. (*Fleming v. Bale,* 23 Kan. 88; *Bryan v. Bauder,* 23 Kan. 95; *Thompson v. Burge,* 60 Kan. 549, 57 Pac. 110, 72 Am. St. Rep. 369; *Clevenger v. Figley,* 68 Kan. 699, 75 Pac. 1001.)

The order of confirmation is a final judgment, and in the absence of an appeal is as conclusive upon the rights of the parties, including the plaintiffs herein, as could be any adjudication by a court of competent jurisdiction. (*Watson v. Tromble,* 33 Neb. 450, 50 N. W. 331, 29 Am. St. Rep. 492, and note.) The order of confirmation not having been appealed from, it absolutely fixed the rights and liabilities of North as a purchaser. Of course it would not validate a void sale, as where there was no jurisdiction in the court to order it, but unless the order is void it is not open to collateral attack. If there had been fraud, mistake, or other like ground for which a court of equity would avoid a sale made by one person to another, the plaintiffs would have had a reason for asking equitable relief, but so far as the record shows North was an innocent purchaser.

The misconduct of the executrix is the principal ground alleged for overthrowing the sale. The plaintiffs, although they had abundant notice, allowed the sale to be confirmed and the deed to the purchaser to be approved by the court before making any protest or

Lake v. Hathaway.

objection. Then they filed the contract of the heirs, a contract of which the purchaser had no previous knowledge, and which was not brought to the attention of the court until the proceedings had been closed and the deed approved. The rights of the purchaser having been determined by a court of competent jurisdiction, the orders of sale and of confirmation, from which no appeals were taken, conclusively established that the sale was necessary for the payment of the debts of the estate and that the land was regularly and legally sold for a fair and adequate consideration. When the sale was confirmed the contract became complete and the equitable title to the land passed to the purchaser. He had already paid $200 of the purchase-price, and when the balance was tendered he became entitled to a deed, and if the executrix had refused to give him one its delivery could have been compelled by an appropriate proceeding. The contract between the heirs, if a valid one was made, did not deprive the court of jurisdiction nor affect a purchaser who had no notice of it. We may assume that the contract was fairly made, that it was binding on the heirs, and that the failure of Mrs. Lake to observe its provisions and discontinue the proceedings was a breach of contract for which she is liable to her brothers, but North had no part in the transaction and his rights are in no way affected by its existence.

It is argued that the court was without power to order a sale because the land was absolutely devised to the plaintiffs. "Under our statutes, the whole property of the decedent, not exempt, both real and personal, is charged with the payment of debts." (*McNutt v. McComb*, 61 Kan. 25, 27, 58 Pac. 965.)

As each heir took the share devised subject to the debts of the testator, we need not inquire whether the clause in the will providing for the sale of this land for the payment of indebtedness was precatory or imperative. It is conceded that there was a large in-

debtedness, the greater part of which was secured by mortgages on the real estate, and it also appears that the personal property of the estate was insufficient to pay the unsecured debts, so that there were good reasons for the action of the court in ordering a sale of a portion of the real estate. However, the question whether there was necessity for a sale was one for the probate court to decide, and its unreversed decision, whether right or wrong, is absolutely binding upon the parties.

Nothing stated in plaintiffs' petition or produced as evidence afforded any ground for invalidating the sale made to North or interrupting the delivery of the deed to him. The judgment is therefore reversed, and the cause remanded for further proceedings in accordance with the views expressed herein.